1

2

3

4            UNITED STATES DISTRICT COURT

5                  DISTRICT OF NEVADA

6                         * * *

7    DEBORAH CARROLL,                        Case No. 2:18-CV-960 JCM (BNW)

8                         Plaintiff(s),              ORDER

9          v.

10   LADAH LAW FIRM PLLC, et al.,

11                       Defendant(s).

12

13          Presently before the court is the defendants' (Ramzy Ladah and Ladah Law Firm, PLLC)

14   motion for summary judgment.  (ECF No. 52).  Plaintiff Wayne Hagendorf filed a response

15   (ECF No. 58), to which the defendants replied (ECF No. 60).  Plaintiff also filed a countermotion

16   for summary judgment (ECF No. 59) which has been fully briefed (*see* ECF Nos. 61, 62).  For

17   the reasons stated below, the court GRANTS the defendants' motion for summary judgment and

18   STRIKES the plaintiff's motion for summary judgment.

19   **I.      Background**

20          This case involves federal and state law claims for overtime wages.  (ECF No. 2).  It is

21   before the court on summary judgment for a second time after a trip to the Ninth Circuit.  After

22   this court granted summary judgment in favor of the defendants (hereinafter "Ladah") and closed

23   the case, the case was appealed.  The Ninth Circuit affirmed in part and vacated in part the

24   court's judgment and remanded the case for reconsideration.  (ECF No. 42, at 4).  The court

25   recounts the undisputed facts.

26          Ladah Law Firm is a personal injury firm that employed the plaintiff's late wife, Deborah

27   Carroll, as a paralegal for approximately 42 weeks.  (*Id.* at 2).  Carroll alleged in her complaint

28   that Ladah never paid her overtime wages, despite her averaging 65 hours of work per week

**James C. Mahan**
**U.S. District Judge**

1  during her employment.  (*Id.* at 4, ¶ 13).  She also alleged that Ladah did not issue her final

2  paycheck within the statutorily required time frame.  (*Id.* at 6).

3         Regarding the overtime wage claims, Ladah paid the paralegals at the firm on a salary

4  and therefore did not keep detailed records of their work schedule.  (Ramzy Dep., ECF No. 23, at

5  18–20).  However, firm employees used a virtual desktop application called "Effortless Office"

6  ("EO") to access work files, which recorded their logins and logouts.  (ECF No. 35, at 1, 5).

7  This court found that, based on the EO records and lack of other substantive evidence, Carroll

8  had not met her burden of producing sufficient evidence of overtime work to survive summary

9  judgment.  (*See generally id.*).

10         The Ninth Circuit affirmed this court's grant of summary judgment in favor of Ladah for

11  29 of the 42 weeks but reversed for reconsideration of the remaining 13 weeks.  (ECF No. 42, at

12  2–3).  The circuit court explained that Carroll's "general statements that she performed

13  additional tasks while logged out of the EO system and her self-generated spreadsheet citing

14  isolated texts and emails as evidence of multiple hours worked are too conclusory to survive

15  summary judgment."  (*Id.* at 3).

16         But the circuit court also held that—based on "the EO records, Carroll's declaration, and

17  the undisputed fact that EO logs users out after a period of inactivity"—there was a genuine issue

18  of material fact regarding whether Carroll worked overtime during the other 13 weeks.  (*Id.* at 2).

19  The EO logs show that Carroll was logged in for over 40 hours during 13 of the 42 weeks that

20  she was employed.  (*Id.*).

21         The Ninth Circuit instructs this court to reconsider those 13 weeks on remand, but to also

22  address whether Ladah had constructive knowledge of Carroll's hours worked.  (*Id.* at 3).

23  Although the issue of constructive knowledge had been raised by Ladah in the initial motion for

24  summary judgment, the court did not consider it.

25         Regarding the late paycheck claim, this court found that it was Carroll who delayed

26  picking up her final paycheck.  (*Id.* at 6).  This court found that there was no reasonable dispute

27  that Ladah notified Carroll that her final paycheck was ready within the statutory timeframe.  (*Id.*

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

1    at 6–7).  It was Carroll who chose not to pick up the check.  (*Id.* at 7).  The Ninth Circuit

2    affirmed the court's factual findings on this issue.[1]  (ECF No. 42, at 4).

3            Unfortunately, Carroll passed away while the case was pending in the Ninth Circuit.

4    (ECF No. 50).  Her husband, Wayne Hagedorf, was substituted in place of Carroll as plaintiff

5    and representative of her estate.  (ECF No. 51).  The Ninth Circuit did not address the fact of her

6    death.  Ladah's instant motion argues that summary judgment is proper because, as Carroll is

7    deceased, the plaintiff no longer has admissible evidence that creates a dispute of fact as to those

8    13 weeks.  (ECF No. 52, at 2).

9    **II.     Admissibility of Carroll's Declaration**

10           Because the parties dispute the admissibility of Carroll's declaration (written before the

11   case was appealed), the court must address this issue first, before turning to the merits of the

12   parties' respective motions.  "A trial court can only consider admissible evidence in ruling on a

13   motion for summary judgment."  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir.

14   2002).  At the summary judgment stage, a trial court may consider evidence with content that

15   would be admissible at trial, even if the *form* of the evidence would not be admissible at trial.

16   *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles*, 253

17   F.3d 410, 418–19 (9th Cir. 2001).

18           Ladah argues that, because Carroll is now deceased, her declaration (which this court and

19   the Ninth Circuit previously considered) is now inadmissible hearsay.  (ECF No. 58, at 16).  The

20   only person with actual, personal knowledge of the number of hours Carroll worked was Carroll

21   herself, and she is no longer available to provide that testimony.  Plaintiff argues that Carroll's

22   declaration is admissible under Federal Rule of Evidence 807—the "catchall" exception to the

23   hearsay rule.  (ECF No. 58, at 28).  The court disagrees.

24           The rule governing consideration of hearsay at the summary judgment stage is that

25   hearsay statements can be considered if they are capable of admission at trial.  *See Goodale*, 342

26   F.3d at 1036–37 (holding that the contents of a diary could be admissible at trial if the author

27
28           [1] The Ninth Circuit reversed this claim for reconsideration because Carroll's last
     paycheck may not have included all wages due, in light of its reversal of 13 of Carroll's 42
     weeks of claimed overtime.  (ECF No. 42, at 4).

1    testified to the relevant portions from her personal knowledge).  The parties do not dispute that,

2    in its current form, the Carroll declaration is hearsay.  And, as Caroll is deceased and cannot

3    testify as to the contents of the declaration from her personal knowledge at trial, the declaration

4    cannot be considered at the summary judgment stage unless a hearsay exception applies.

5            Under Federal Rule of Evidence 807, a statement may be excluded from the hearsay rule

6    if, (1) "the statement is supported by sufficient guarantees of trustworthiness," and (2) "it is more

7    probative on the point for which it is offered than any other evidence obtained through

8    reasonable efforts."  FED. R. EVID. 807(a).  The declaration fails on both counts.

9            First, the declaration is plainly self-serving and uncorroborated.  *See Bulthuis v. Rexall*

10   *Corp.*, 789 F.2d 1315, 1316 (9th Cir. 1985) (finding no guarantee of trustworthiness for "self-

11   serving" statements made in a deposition where no corroboration was available).   In the

12   declaration, Carroll states in general and conclusory terms that she "frequent[ly]" worked

13   overtime, even though the EO records belie that claim.  (ECF No. 52-6, at 5).  These statements

14   are in stark contrast to her deposition statements.  When asked directly about specific weeks, she

15   repeatedly states that she doesn't remember whether or not she worked overtime.  (*See generally*

16   Carroll dep., ECF No. 59-3).

17           Second, the declaration is not "more probative" than other evidence of whether Carroll

18   *actually* worked overtime for 13 out of the 42 weeks she was employed.  Carroll was deposed

19   before writing the declaration.  (*See id.*).  Carroll was questioned directly about her work habits

20   and work schedule during her deposition.  (*See generally id.*).  Deposition testimony is no doubt

21   more probative evidence than a one-sided declaration.   The declaration is also not "more

22   probative" than other evidence of whether Ladah knew, or should have known, that Carroll was

23   working overtime.  Defendant Ramzy Ladah's *deposition* is more probative of this fact than

24   Carroll's one-sided *declaration*.

25           Carroll will not be available to testify at trial.  Because this court finds that her

26   declaration is hearsay not within the exception of Rule 807, it will not consider it at the summary

27   judgment stage.

28   . . .

**James C. Mahan**
**U.S. District Judge**

- 4 -

**III.     Ladah's Summary Judgment Motion**

Having decided the issue of admissibility, the court now turns to the merits of Ladah's motion for summary judgment.

A.     Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits (if any), show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.  Rather, it draws all inferences in the light most favorable to the nonmoving party.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987).

When the non-moving party bears the burden of proof at trial, the moving party can meet its burden on summary judgment in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet his initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies his initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

James C. Mahan
U.S. District Judge

- 5 -

1    However, the nonmoving party cannot avoid summary judgment by relying solely on

2    conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040,

3    1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of

4    the pleadings and set forth specific facts by producing competent evidence that shows a genuine

5    issue for trial.  *See Celotex*, 477 U.S. at 324.  If the nonmoving party's evidence is merely

6    colorable or is not significantly probative, summary judgment may be granted.  *Anderson v.*

7    *Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

8        B.    Discussion

9        On remand, this court must address the issue of constructive knowledge, which it

10   previously left undecided.  Ladah argues that plaintiff's overtime wage claims fail because it is

11   undisputed from the record that Ladah could not have known that Carroll was allegedly working

12   overtime.  (ECF No. 22, at 12).  Plaintiff counters that Ladah was aware that Carroll worked

13   overtime because Ramzy Ladah texted her on two occasions that he knew she was

14   "overwhelmed with a very high caseload."[2]   (ECF No. 31, at 13–14).  The court finds the

15   plaintiff's argument unpersuasive.

16       In *Forrester v. Roth's I.G.A. Foodliner, Inc.*, the Ninth Circuit held that an employer is

17   not liable for overtime pay under the Fair Labor Standards Act unless he knew or should have

18   known that an employee was working overtime.  646 F.2d 413, at 414 (Ninth Cir. 1981).  When

19   "an employer has no knowledge that an employee is engaging in overtime work and that

20   employee fails to notify the employer or deliberately prevents the employer from acquiring

21   knowledge of overtime work, the employer's failure to pay for the overtime hours is not a

22   violation of § 207."  *Id.*

23       Although the Nevada Supreme Court has not addressed this issue, the court is persuaded

24   that it would hold that constructive knowledge is also a prerequisite to liability under Nevada's

25

26

27

28       [2] Although plaintiff makes additional arguments as to constructive notice on remand, this court will not consider them because these arguments were not raised prior to the Ninth Circuit's remand.

James C. Mahan
U.S. District Judge

1   analogous overtime wages law, Nevada Revised Statute § 608.018.[3]  The Nevada Supreme Court

2   has previously looked to the FLSA when deciding state law wage claims.  *See Terry v. Sapphire*

3   *Gentlemen's Club*, 336 P.3d 951, 958 (Nev. 2014).  And, following the reasoning of the Ninth

4   Circuit in *Forrester*, it would be unreasonable to find an employer in violation of overtime wage

5   laws when it could not have known that an employee was working overtime.

6        Turning to the summary judgment evidence before the court, Ramzy stated in his

7   deposition that he did not expect any of the firm's paralegals to work over 40 hours a week.

8   (ECF No. 23, at 19–20).   *None* of the paralegals deposed dispute this[4]—in fact—Kristina

9   Marzec,[5] Natalie Stevenson,[6] and Brenda Batson[7] all corroborate Ramzy's statements.  Although

10  there was no *official* timekeeping system in place, it is undisputed that Ramzy instructed the

11  paralegals to adjust their hours whenever they had to stay late or work weekends.  For example,

12  if a paralegal had to work late one day to meet a deadline, Ramzy would tell that paralegal to

13  come in to work later the following day.[8]  Plaintiff does not point to any evidence that Carroll

14  ever reported after-hours work to Ramzy, and Carroll's deposition does not dispute this.

15       Ramzy could not have had constructive knowledge that Carrol ever worked overtime.

16  Ramzy's text stating that Carroll was "overwhelmed" with her workload, even read in the light

17  _____

18       [3] Where the state's highest court has not decided an issue of law, the district court's task
19  is to "predict" how that court would rule.  *Hayes v. Cnty. of San Diego*, 658 F.3d 867, 871 (9th
    Cir. 2011).

20       [4] Although Shereen Sharif stated she sometimes worked over 40 hours a week, she did
21  not say this was expected of her.  (Sharif dep. ECF No. 59-6, at 10–11).

22       [5] Marzec repeatedly stated that she was not expected to work overtime, and that anytime
    she worked outside of normal hours was done in order to makeup for personal time she had taken
23  off from work.  (Marzec Dep. ECF No. 58-7, at 6–8, 10).

24       [6] Stevenson stated she rarely worked after hours or on weekends, and when she did, it
    was without Ramzy's knowledge and for her own personal benefit.  (Stevenson Dep. ECF No.
25  58-8, at 8–10).

26       [7] Despite leaving the firm on less than good terms, Batson confirmed that Ramzy did not
    expect paralegals to work more than 40 hours a week and she could not recall any week in which
27  she *did* work more than 40 hours.  (Batson Dep. ECF No. 58-9, at 7).

28       [8] This is undisputed by the record evidence.  Ramzy (ECF No. 23, at 20), Batson (ECF
    No. 58-9, at 6–7), Marzec (ECF No. 58-7, at 6–7), Sharif (ECF No. 59-6, at 9), and Stevenson
    (ECF No. 59-8, at 14–15) all confirm this.

James C. Mahan
U.S. District Judge

most favorable to the plaintiff, is insufficient to establish a dispute of fact.  This is because the record evidence establishes that Carroll often worked fewer than 40 hours a week,[9] took many vacation days,[10] would leave the office for hours at a time,[11] was often caught arriving late or leaving work early,[12] worked on personal matters while at the office,[13] and had a general reputation for not being interested in working at all.[14]  Ramzy could not have known that Carroll was allegedly working overtime, given her behavior while she was at the office.

Even *if* the court considered the plaintiff's declaration that he observed Carroll working at home,[15] this does not create a factual dispute over whether *Ramzy* should have known that Carroll allegedly worked overtime.  Ramzy could not have been privy to Carroll's working habits while she was at home.  Given the undisputed evidence that Ramzy did not expect any of the paralegals to work overtime and the policy for paralegals to let Ramzy know whenever they worked extra hours, there is no dispute of fact that Ramzy had no constructive or actual knowledge that Carroll worked overtime.  The court grants summary judgment in favor of Ladah.

**IV.     Plaintiff's Countermotion for Summary Judgment**

Plaintiff filed a countermotion for summary judgment.  (ECF No. 59).  However, his countermotion is merely his response to Ladah's summary judgment motion filed under a separate title on the court's electronic docket.  (*Compare* ECF No. 59 *and* 58).  In other words,

---

[9] ECF No. 24 (EO Logs).

[10] *Id.*

[11] ECF No. 23, at 137–138 (Marzec dep.); ECF No. 59-5, at 4 (Karimi dep.).

[12] ECF No. 59-5, at 3–4, 7 (Karimi dep.);

[13] ECF No. 59-5, at 7 (Karimi dep.); ECF No. 59-7, at 13–14 (Marzec dep.); ECF No. 23, at 155–58 (Stevenson dep.).

[14] ECF No. 23, at 156 (Stevenson dep.).

[15] Ladah argues that plaintiff's declaration should not be considered because he was never disclosed as a potential witness.  (ECF No. 60, at 14).  The court does not make a ruling on this issue.

1   plaintiff filed the same document twice, under different titles.  Plaintiff's response-and-
2   countermotion document runs afoul of several of the court's local rules.

3   Local Rule IC 2-2(b) requires parties to file separate documents when requesting
4   different types of relief.  The Rule explicitly prohibits filing the same document for a motion
5   response and a countermotion.  LR IC 2-2(b).  Local Rule IC 7-1 permits the court to strike any
6   document not in compliance with the rules.

7   Local Rule 7-2 requires motions to be supported by a memorandum of points and
8   authorities.  Failure of a moving party to file points and authorities in support of a motion
9   constitutes a "consent to the denial of the motion."  LR 7-2(d).  Plaintiff's response-and-
10   countermotion document contains no points and authorities in support of his countermotion for
11   summary judgment.  The "countermotion" portion of the document is only two paragraphs in
12   length, at the very end.  (ECF No. 59, at 30–31).

13   Plaintiff attempts to circumvent this defect by stating that his countermotion argument is
14   "set forth above" in his response to Ladah's motion for summary judgment.  (*Id.* at 30).  But this
15   will not do.  Those arguments relate to his response and not to his countermotion.  They cannot
16   be summarily repurposed as points and authorities in support of a countermotion for summary
17   judgment.

18   Local Rule 7-3 limits responses to motions to 24 pages and expressly prohibits parties
19   from circumventing this rule by filing multiple motions.  Plaintiff's response-and-countermotion
20   document is over 30 pages. (*See* ECF Nos. 58, 59).  The response portion of the document is
21   over 29 pages.  (*See id.*).  LR 7-3 requires parties to move for permission to exceed page limits
22   *before* filing their motion or brief.  LR 7-3(c).

23   Finally, under Local Rule 7-2(b), surreplies are discouraged and may not be filed without
24   leave of court.  But a countermotion allows the plaintiff to file a reply-in-support, giving him the
25   last word on the matter.  It therefore appears that the plaintiff's tactic of filing a response with a
26   countermotion tacked on hastily at the end may be a ploy to get around the court's rule against
27   surreplies.

28

**James C. Mahan**
**U.S. District Judge**

1    It is well established that local rules "have the force of law and are binding upon the

2 parties and upon the court." *Pro. Programs Grp. v. Dep't of Com.*, 29 F.3d 1349, 1353 (9th Cir.

3 1994) (citations omitted).  The district court has "considerable latitude in managing the parties'

4 motion practice and enforcing local rules that place parameters on briefing." *Christian v. Mattel,*

5 *Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002).  Given the multitude of local rules that the plaintiff

6 has violated, this court has more than sufficient justification to strike the plaintiff's

7 countermotion.  (ECF No. 59).

8  **V.      Conclusion**

9    Accordingly,

10    IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the Ladah defendants'

11 motion for summary judgment (ECF No. 52) be, and the same hereby is, GRANTED.

12    IT IS FURTHER ORDERED that the plaintiff's countermotion for summary judgment

13 (ECF No. 59) be, and the same hereby is, STRICKEN from the docket.

14    As no claims remain, the clerk of the court is INSTRUCTED to close this case.

15    DATED February 20, 2024.

16

17 UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 10 -